823 So.2d 740 (2002)
STATE of Florida, Petitioner,
v.
Eugene Michael BYARS, Respondent.
No. SC01-1930.
Supreme Court of Florida.
July 3, 2002.
*741 Robert A. Butterworth, Attorney General, Celia A. Terenzio, Assistant Attorney General, Chief, West Palm Beach Bureau, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, FL, for Petitioner.
Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Respondent.
Bethanne Walz, Tallahassee, FL, for The Florida Coalition Against Domestic Violence, Amicus Curiae.
LEWIS, J.
We have for review a decision of a district court of appeal in which the following question has been certified to be of great public importance:
DOES A RESTRAINING ORDER ENJOINING A DEFENDANT FROM ENTERING A STRUCTURE WITHDRAW THE CONSENT ENJOYED BY MEMBERS OF THE GENERAL PUBLIC FROM ENTRY INTO THE STRUCTURE, THEREBY PREVENTING THE DEFENDANT FROM RAISING THE OPEN TO THE PUBLIC DEFENSE RECOGNIZED IN MILLER V. STATE, 733 So.2d 955 (Fla. 1998)?
State v. Byars, 792 So.2d 1235, 1235 (Fla. 4th DCA 2001). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

Facts and Procedural History
Despite an existing domestic violence injunction prohibiting his physical presence within his wife's place of employment, the respondent entered the consignment store in which she worked on September 17, 1998. Once inside the shop, Byars allegedly shot and killed his wife, Kathleen Kincaid. Respondent was charged with first-degree murder, armed burglary of an occupied structure with an assault or battery, violation of an injunction with violence, and possession of a firearm with an altered serial number. Prior to trial, the trial court dismissed only the burglary charge based upon this Court's decision in Miller v. State, 733 So.2d 955 (Fla.1998). The State appealed the dismissal of the burglary charge to the Fourth District Court of Appeal. The remaining charges of first-degree murder, violation of an injunction with violence, and possession of a firearm with an altered serial number were unaffected by the trial court's dismissal of the burglary charge, and are not before us at this time. Indeed, upon the issuance of this opinion, the trial court should proceed with these charges.
On appeal, the Fourth District affirmed. See State v. Byars, 804 So.2d 336 (Fla. 4th DCA 2001). The appellate court held:
Because the premises where appellee allegedly committed the murder were open to the public, even though he was prevented by a domestic violence injunction from entering the store, we are *742 compelled to affirm on the authority of Miller.

Id. Subsequently, the district court granted the State's motion and certified the above-stated question to this Court as one of great public importance. See Byars, 792 So.2d at 1235.

Analysis
The relevant statutory provision in the instant case is section 810.02, Florida Statutes (1999), Florida's legislative provision which addresses burglary. At the time of the respondent's prosecution, it provided:
(1) "Burglary" means entering or remaining in a dwelling, structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.
(2) Burglary is a felony of the first degree ... if, in the course of committing the offense, the offender:
(a) Makes an assault or battery upon any person; or
(b) Is or becomes armed ... with ... a dangerous weapon....
§ 810.02, Fla. Stat. (1999). To resolve the issue certified by the district court below, our review must focus upon the statute's exception for conduct which occurs where "the premises are at the time open to the public." Id.
"One of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter." Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991); see also McFadden v. State, 737 So.2d 1073 (Fla. 1999); § 777.02(1), Fla. Stat. (2001) ("The provisions of this code and offenses defined by other statutes shall be strictly construed ..."). Therefore, any ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense. See id.; Perkins, 576 So.2d at 1312.
The doctrine that mandates construing statutes in favor of the accused also requires that courts give effect to the language and intent of the Legislature in its interpretations of statutes. See, e.g., Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1220, 1234 (Fla.2000); see also Vocelle v. Knight Bros. Paper Co., 118 So.2d 664, 668 (Fla. 1st DCA 1960) (holding that "neither the courts nor the administrative agencies have power to modify the plain purpose and intent of the legislature as expressed by the language employed in the statutes"). For this reason, "[w]ords and meanings beyond the literal language may not be entertained nor may vagueness become a reason for broadening a penal statute." Perkins, 576 So.2d at 1312.
In the instant case, the Legislature's intent is apparent: A person who enters or remains in a structure with the intent to commit an offense therein will be guilty of burglary, "unless the premises are at the time open to the public." § 810.02(1), Fla. Stat. (1999) (emphasis supplied). The plain intention of the Legislature's use of the disjunctive "unless" was to create an exception to the preceding inclusive statement. Thus, under the Florida burglary statute, when a structure is open to the public it cannot be burglarized.
In 1999, we had occasion to interpret the "open to the public" exception in Miller v. State, 733 So.2d 955 (Fla.1999). There, this Court stated in absolute and unmistakable terms:
[W]e hold that if a defendant can establish that the premises were open to the public, then this is a complete defense. Whether or not consent may have been *743 withdrawn, either by direct or circumstantial evidence, is not an issue. The only relevant question is whether the premises were open to the public at the time the defendant entered or remained with the intent to commit an offense therein.
Id. at 957 (citations omitted). With these words, this Court clearly established that a defendant's proof that a structure and specific location therein was open to the public ends the inquiry with regard to burglary. We have subsequently reaffirmed our adherence to the Miller bright-line rule in State v. Butler, 735 So.2d 481 (Fla.1999), and Johnson v. State, 786 So.2d 1162 (Fla. 2001). Just as we determined that an owner's notification to a defendant that he was unwelcome in a building is immaterial to a burglary prosecution, see Miller, 733 So.2d at 957, we must conclude that the existence of an injunction prohibiting the instant defendant from entering his wife's place of employment is also irrelevant here to the strict analysis of the premises. Interpretation of the burglary statute's exception must be specifically directed to the general nature of the premises, not the personal characteristics of the individual charged with the crime. Thus, the injunction in effect against Byars does not affect the impropriety of charging him with burglary.
The State contends that this Court should refer to the decisions of the Washington and Oregon courts of appeals for direction here. In State v. Kutch, 90 Wash.App. 244, 951 P.2d 1139 (1998), the court held that written and verbal notice to the defendant operated to preclude him from entering a shopping mall. See id. at 1140. Additionally, the ban on the defendant's entering the mall allowed the state to prosecute the defendant for burglary. See id. at 1142. Kutch, however, is inapposite here. The Washington burglary statute is far different and does not have an exception for places open to the public as does the Florida statute. Instead, the Washington statute defines a person who "enters or remains unlawfully in a building" as one who is "not then licensed, invited, or otherwise privileged to enter or remain." Id. at 1141 (quoting Wash. Rev. Code §§ 9A.52.010(3), 9A.52.030(1) (1998)). Thus, we do not find this decision persuasive in view of the significant differences in statutory language.
In State v. Ocean, 24 Or.App. 289, 546 P.2d 150 (1976), however, the Oregon Court of Appeals interpreted a burglary statute which contained a variation of an "open to the public" exception. In Ocean, the court held that a store's banning the defendant from returning to the store removed his membership in the general public. See id. at 152-53. Therefore, he was subject to prosecution for burglary even when the establishment was open for business. See id.
Examination of the text of the Oregon statute, however, reveals the reason for the court's conclusion. The statute in question in Ocean provided:
A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein.
. . . .
"Enter or remain unlawfully" means:
.... To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so....
Id. at 152 (quoting Or.Rev.Stat. §§ 164.205(3), 164.215(1) (1975)). Close attention must be given to the definition of "enter or remain unlawfully," which makes it absolutely clear that in Oregon, one can *744 commit burglary when the building is either not open to the public, or when the entrant is not otherwise licensed to enter or remain in the structure.
Clearly, the Oregon statute is not constructed in the same manner as Florida's. The Florida "open to the public" condition is an independent exception to the inclusive definition of burglary which precedes it. See § 810.02(1) ("`Burglary' means entering or remaining in a ... structure ... with the intent to commit an offense therein, unless the premises are at the time open to the public...."). In contrast, the Oregon statute details the elements of burglary, then defines "enter[ing] or remain[ing] unlawfully" to affirmatively allow burglary prosecutions when either the business is closed, or the defendant is prohibited from entering. Ocean, 546 P.2d at 152. It is the sentence structure which produces the divergent results. Under Oregon law, there is no affirmative exception to burglary when an establishment is open to the public. Thus, a store's banning of an individual can make burglary prosecutions viable even when the defendant entered the building during a time it was open to the public. Indeed, in Ocean, because the defendant did "not have a license to enter as a member of the general public," prosecution for burglary was proper "even when the premises [were] otherwise open to the public." Id. As the formulation of the Florida burglary statute halts prosecution whenever "the premises are at the time open to the public or the defendant is licensed or invited to enter or remain," § 810.02(1), Fla. Stat. (1999), it differs intrinsically from the statute applied in Ocean.
Additionally, the petitioner's argument, adopted by the dissent, that an injunction or other prohibition to entry placed upon an individual defendant should remove him or her from the "general public," and thus allow burglary prosecutions, fails to focus on the integral question here. The issue, by statutory structure, is not whether Byars or another defendant has been prohibited from entering a structure, it is whether "the premises are at the time open to the public." Id. It is the nature of the property that is described in the applicable statute, not the status of a person. The exception contained in section 810.02 has only this single elementthe text of the statute makes it clear that there is no "implicit" requirement that the defendant be "a member of the public entitled to enter the premises." Dissenting op. at 746. The dissent seeks to judicially add to the burglary statute to exclude defendants not entitled to enter a structure "open to the public" from the explicit exception to the statute's prohibition created by the Legislature, thereby broadening the provisions with regard to certain people. This Court is without that power. Thus, resolution of the instant case is entirely independent of a particular defendant's situation or invited status. Otherwise, businesses accessible to the general public could facilitate burglary prosecutions by simply posting notice at their entrances that shoplifters and vandals are forbidden to enter. See generally State v. Schenck, 186 N.J.Super. 236, 452 A.2d 223, 226 (Law Div.1982). Clearly, the Florida Legislature, in structuring this statute and selecting its words, never intended to promote that type of manipulation of the criminal justice system.
The State encourages this Court to analogize this case to the scenario before the court in State v. Woods, 624 So.2d 739 (Fla. 5th DCA 1993). There, the district court recognized that "shopping malls are quasi-public places which must be open to the public on a nondiscriminatory basis. But the owner of such a mall does not lose all control over its private ownership interest." *745 Id. at 740; see also Corn v. State, 332 So.2d 4, 8 (Fla.1976). Therefore, once the mall management notified the defendant that she was not to return, any subsequent presence on mall property was trespassing. See Woods, 624 So.2d at 740. Clearly, however, it would be both improper and illogical to analogize a trespass case to the instant burglary prosecution, because trespass cases interpret a statute that is structured in a manner entirely different from the burglary provision. The text of the trespass statute reads:
Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.
§ 810.08(1), Fla. Stat. (2001). The trespass statute does not contain two of the principle elements of the burglary provision: the intent element and the open to the public exception. The trespass statute is also predicated upon the status of the person, not the nature of the premises. For these reasons, the State's attempts to analogize Woods and Corn to the instant case are without merit.
Additionally, the State urges this Court to look to the decision of State v. Suarez-Mesa, 662 So.2d 735 (Fla. 2d DCA 1995), as persuasive authority here. There, the Second District held that the defendant was properly convicted of burglarizing his own home where he was subject to a domestic violence injunction prohibiting him from entering the premises. See id. at 735-36. Specifically, the court held: "A court order can negate a person's right to enter the premises even if that person owns the premises." Id. at 736. Seizing on this language, the State contends that just as an injunction can extinguish a homeowner's right to enter his own house, an injunction can remove Byars' right to enter his wife's workplace.
There is no question that the domestic violence injunction here made the respondent's entrance into Ms. Kincaid's workplace clearly contrary to the court order and illegal. However, it is just as clear that the illegality resulted from violation of the injunction and trespassing upon the owner's premises, not from burglary. Suarez-Mesa is inapposite here because it involved a private home and did not involve a structure "open to the public." Therefore, unlike the situation in the instant case, no exception to the burglary statute was available to Mr. Suarez-Mesa. Thus, this argument must also fail.
An examination of the State's arguments reveals no basis upon which this Court could or should create an exception to its Miller analysis. While the impulse to protect battered women from domestic abusers in any way possible is, most assuredly, a noble one, we may not interpret the law so as to give it a forced, unnatural interpretation contrary to the statutory structureregardless of the admirable goals that may possibly be achieved thereby. As the plain meaning and structure of the burglary statute's text binds this Court's interpretation here, we are without power to give the law the construction that the State seeks. Indeed, the district court below was prescient when it concluded, "the state would be well advised to address this issue to the legislature." Byars, 804 So.2d at 338.

Conclusion
Based upon the foregoing, we answer the certified question in the negative and approve the decision rendered by the Fourth District below. Under Miller v. State, the trial court properly dismissed *746 the respondent's burglary charge. The remaining murder and associated charges are unaffected by this opinion, and should proceed.
It is so ordered.
ANSTEAD, C.J., and SHAW and HARDING, JJ., concur.
QUINCE, J., dissents with an opinion, in which WELLS, J., concurs.
PARIENTE, J., recused.
QUINCE, J., dissenting.
I cannot agree with the majority's position that a restraining order which prohibited the defendant from being in the store where his wife was employed is not a withdrawal of consent to this defendant's entry into this particular public structure. The majority opinion is based on this Court's opinion in Miller v. State, 733 So.2d 955 (Fla.1998), and more particularly the language in Miller which is a quote from Ray v. State, 522 So.2d 963, 967 n. 6 (Fla. 3d DCA 1988), and provides, "That the premises are open to the public is a complete defense to a burglary charge...." Implicit in this statement, however, are two elements: that the premises in question is open to the public and that the person who enters is a member of the public entitled to enter therein.
The defendant in this case does not satisfy the second element. There was a domestic violence injunction entered against Byars that specifically stated he could not come to his wife's work place, the premises in question. Thus, he was no longer a member of the public entitled to enter the premises of this consignment shop. On this basis, I would quash the decision of the Fourth District Court of Appeal and remand this case to the trial court to reinstate the burglary charge.
WELLS, J., concurs.