IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35933-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TAMARA LOUISE COOKE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — A jury convicted Tamara Louise Cooke of first degree burglary

and first degree assault. We affirm Ms. Cooke's convictions but remand for revisions to

the judgment and sentence.

FACTS

In April 2017, Timothy Ahrens permitted his best friend's widow, Tamara Cooke,

to stay with him "for a few days" because she was "down and out and was in need of a

place to stay." Report of Proceedings (Mar. 5, 2018) at 76. Ms. Cooke's stay at Mr.

Ahrens's home ended abruptly; one morning, Mr. Ahrens woke up and found Ms. Cooke

was gone, along with his truck. Mr. Ahrens inferred Ms. Cooke had taken his truck. It

was never recovered.

On August 7, 2017, Mr. Ahrens arrived home from work between 7:00 p.m. and

7:30 p.m. When he entered the house, he noticed "none of [his] lights were working" and

some were "disabled." *Id*. at 78. As Mr. Ahrens turned around to shut his front door, he "was hit from behind" in his back. *Id*.

After finally finding a working light, Mr. Ahrens discovered Ms. Cooke standing behind him:

> I turned around, and [saw] that it was Tammy [Cooke], and I asked her what she was doing in my house. And she's like, "I wanted to talk to you." And I said, "If you needed to talk to me, come talk to me." And I asked her how she got in, and she was very vague.

*Id*. at 78-79. This was the first time the two had spoken since she had left his home in April.

Mr. Ahrens saw Ms. Cooke holding an ice pick that was approximately 8-10 inches long. He theorized that Ms. Cooke had used the pick to stab him. Mr. Ahrens asked Ms. Cooke if she had stabbed him. She denied doing so.

Mr. Ahrens and Ms. Cooke argued and then Ms. Cooke asked Mr. Ahrens if he would "'let [her] leave.'" *Id*. at 79. Mr. Ahrens responded: "'You better leave, because, you know, I'm not happy.'" *Id*. When Ms. Cooke left, she grabbed a white handbag and walked away from the house.

After Ms. Cooke left, Mr. Ahrens confirmed he had been stabbed in the back and called some friends, who took him to an urgent care facility. He was then transported to a hospital. Hospital staff contacted the police and an investigation ensued. Mr. Ahrens was

diagnosed with a collapsed lung. He remained in the hospital for five days. It took a month for Mr. Ahrens to sufficiently recover from his injuries so that he could return to work.

When Mr. Ahrens returned home from the hospital, he discovered evidence of a break-in through the back door to his house. Several valuable belongings were missing.

Ms. Cooke was arrested and went to trial on charges of first degree burglary and first degree assault with a deadly weapon enhancement. The jury convicted Ms. Cooke of the substantive charges, but it did not reach a finding on the deadly weapon enhancement.

At sentencing, the State asked the court to impose a low-end standard range sentence along with restitution, as set forth in a proposed judgment and sentence. The State also commented that Ms. Cooke's assault conviction was subject to a mandatory minimum term of five years. Defense counsel concurred with the State's sentencing recommendations and Ms. Cooke declined allocution.

After hearing from the parties, the court accepted the State's recommendations and imposed a low-end sentence of 111 months' incarceration. The written judgment and sentence states that this term of incarceration is subject to a 5-year mandatory minimum for Ms. Cooke's assault conviction. Consistent with the State's unchallenged recommendation, the court imposed restitution totaling $19,413.23. The court waived

3

discretionary legal financial obligations based on Ms. Cooke's indigence, but imposed a

$500 crime victim penalty assessment, a $200 criminal filing fee, and a $100 DNA[1]

collection fee.

Ms. Cooke timely appeals.

## ANALYSIS

*Sufficiency of the evidence*

Ms. Cooke claims the State produced insufficient evidence to secure her burglary

and first degree assault convictions. "Sufficient evidence supports a conviction if, 'after

viewing the evidence in the light most favorable to the prosecution, *any rational trier of*

*fact* could have found the essential elements of the crime [are met] *beyond a reasonable*

*doubt*.'" *State v. Boyle*, 183 Wn. App. 1, 6, 335 P.3d 954 (2014) (quoting *State v. Green*,

94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

Ms. Cooke attacks her burglary conviction by claiming the State failed to prove

she entered or remained unlawfully in Mr. Ahrens's home.

The crime of burglary requires proof that the accused unlawfully entered or

remained in a building. RCW 9A.52.020(1). Entry is unlawful if it is not "licensed,

invited, or otherwise privileged." RCW 9A.52.010(2). The State can (and typically does)

---

[1] Deoxyribonucleic acid.

meet its burden of proving unlawful entry through circumstantial evidence. *State v.*

*McDaniels*, 39 Wn. App. 236, 240, 692 P.2d 894 (1984).

Viewed in the light most favorable to the State, the evidence here supports a jury

finding of unlawful entry. Although Ms. Cooke had permission to live in Mr. Ahrens's

home at one time, that permission was temporary. According to Mr. Ahrens, Ms. Cooke

was allowed to stay at his home only for a few days while she had nowhere else to stay.

Once Ms. Cooke rebuffed Mr. Ahrens's hospitality, stole his vehicle, and began living

elsewhere, her permission to be inside the home expired. *See State v. Collins*, 110 Wn.2d

253, 259, 751 P.2d 837 (1988). At that point, Ms. Cooke could no longer enter Mr.

Ahrens's residence without additional permission. The evidence at trial indicates no such

additional permission was ever granted. To the contrary, the evidence indicates Ms.

Cooke knew she lacked permission to be inside Mr. Ahrens's home: she entered the

residence through force and then was vague with Mr. Ahrens when he asked her how she

got inside. We therefore disagree with Ms. Cooke's sufficiency challenge to her burglary

conviction.

Ms. Cooke also claims the evidence was insufficient to support her conviction for

first degree assault. She argues the State failed to prove she had specific intent to cause

"great bodily harm" as required by RCW 9A.36.011. In this context, "great bodily harm"

5

means "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

We find the evidence sufficient to permit an inference of the requisite intent. The State's evidence showed Ms. Cooke stabbed Mr. Ahrens in the back with an 8-10 inch long ice pick. Ms. Cooke used enough force to not only pierce Mr. Ahrens's skin, but also puncture his lung. Ms. Cooke's conduct was indicative of more than an intentional assault. It evoked an attempted assassination. While Mr. Ahrens was fortunate not to have died or suffered permanent injury or disfigurement, this outcome was not inevitable; his survival and recovery does not negate Ms. Cooke's apparent intent.

*Jury trial rights*[2]

Ms. Cooke was sentenced to concurrent terms of 26 months' confinement for burglary and 111 months for first degree assault. The judgment and sentence also states Ms. Cooke's term of confinement for assault "contains a mandatory minimum term of 5 years." Clerk's Papers (CP) at 135. The parties agree that the 5-year mandatory minimum term is inapplicable because the jury did not make findings contemplated by

---

[2] U.S. CONST. amend. VI; WASH. CONST., art. I, § 22.

RCW 9.94A.540(1)(b). Based on this agreement, we order the mandatory minimum

designation be struck from Ms. Cooke's judgment and sentence.

*Restitution*

Ms. Cooke challenges the trial court's imposition of restitution, arguing the court's

order lacked factual support. We decline to review Ms. Cooke's challenge pursuant to

RAP 2.5(a). The reason the record lacks detail regarding restitution is that Ms. Cooke

failed to challenge the State's restitution request at sentencing. Given Ms. Cooke's lack

of objection, the trial court did not err in imposing restitution in the amount requested by

the State.

Recognizing that her arguments against restitution have not been preserved,

Ms. Cooke claims her attorney performed ineffectively in failing to object to restitution.

This claim fails for lack of factual support. The record is devoid of any information

regarding Mr. Ahrens's losses. Thus, we cannot say that it was unreasonable for defense

counsel to concur with the State's restitution request. Ms. Cooke's attorney was

presumably provided information on Mr. Ahrens's loss amounts through discovery and

this information was then used as a basis for the State's restitution request. Assuming

this occurred, Ms. Cooke's attorney likely concurred with the State's restitution request

7

because counsel determined the request was justified. We lack any basis to find ineffective assistance of counsel.

*Legal financial obligations*

As the parties agree, recent changes to Washington's legal financial obligation statutes warrant striking the $200 criminal filing fee based on Ms. Cooke's indigence and $100 DNA collection fee based on its prior collection from her judgment and sentence. RCW 36.18.020(2)(h) (filing fee "shall not be imposed on a defendant who is indigent as defined in RCW 10.101.010(3)(a) through (c)"); RCW 43.43.7541 (collection fee is inapplicable if "the state has previously collected the offender's DNA as a result of a prior conviction"); s*ee also State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

*Repayment schedule*

The parties agree that Ms. Cooke should not be required to begin payment of her court-imposed financial obligations immediately. Nevertheless, they dispute whether the court has required immediate payment. To clarify this issue, the trial court shall strike the "commencing immediately" language from section 4.1 of the judgment and sentence. CP at 134.

No. 35933-6-III
*State v. Cooke*

CONCLUSION

Ms. Cooke's convictions are affirmed. This matter is remanded with instructions to strike the following from the judgment and sentence: (1) the five-year mandatory minimum designation, (2) $200 criminal filing fee, (3) $100 DNA collection fee, and (4) the statement that collection of any fees, costs, or financial obligations be commenced immediately. Pursuant to the State's agreement, appellate costs shall not be imposed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____   _____
Lawrence-Berrey, C.J.            Korsmo, J.

9